Hillsborough, } No. 4024.
May 1, 1951. }

J. Wilfred Anctil & a. v Joseph Simoneau.

*J. Leonard Sweeney* and *J. Russell Widener* (*Mr. Widener* orally), for the plaintiffs.

*Morris D. Stein* (by brief and orally), for the defendant.

DUNCAN, J. The defendant takes the position that the evidence conclusively established that the lease was "broken" by the lessees, and that no breach by the defendant lessor was established. The written lease given by the defendant required that the rent be paid in advance, and provided that the lessor might reenter upon non-payment of the rent, or "in case of the Lessees' insolvency, or the institution of bankruptcy proceedings by or against them." The evidence tended to show that the lessee Ray paid the rent until sometime in 1946, and that thereafter it was paid by the lessee Hotze, who made the last payment received by the defendant. The defendant testified that at some time before the last payment he learned that Hotze was in bankruptcy, and that shortly after the payment Hotze indicated to him that "he could carry on no longer." The defendant first testified that "at no time" did the lessees refuse to pay the rent according to the agreement; but he later testified with respect to the last payment, made by Hotze: "That was thirty days in advance this man paid and he never paid since. There was some fifteen days, yes, I take it back. There was some fifteen days delinquent," and again: "And I said a few minutes ago they had paid up to the minute, but there was fifteen days delay . . . ."

The date of the new lease to Rubenstien did not appear, but the evidence tended to show that shortly prior thereto a corporation in which the original lessees were interested and which had operated the bowling alleys transferred to Rubenstien its title to the fixtures in the defendant's building. It also appeared that under date of September 9, 1947, the lessee Ray executed a release in favor of the defendant discharging him of all claims by reason of the lease. Ray testified that any papers which he signed were executed in connection with the sale of the fixtures to Rubenstien. The defendant testified that the new lease was drawn up the day after the sale.

The last payment by the defendant to the plaintiffs was made on September 15, 1947, and the evidence indicated that payments were regularly received by the plaintiffs prior to that date. The date of the last payment by Hotze to the defendant did not appear.

The Court could properly find that the defendant's payment on September 15, 1947, indicated receipt by him of rent to the same date, from the original lessees. The testimony of the defendant that there was an arrearage of fifteen days did not require acceptance (*Anctil* v. *Dupont*, 96 N. H. 501), and it could likewise be found that any default was waived. *Buber* v. *Blais,* 79 N. H. 516. Bankruptcy of the lessees was not a compelled conclusion, nor did the evidence conclusively establish a surrender. Since the rent was paid in advance, execution of a new lease to Rubenstien in September could be found to be a breach by the lessor. The finding implicit in the verdict that there was no breach by the lessees was warranted by the evidence, and under the agreement made by the parties at the trial, the defendant was properly found liable to the plaintiffs.

The defendant contends that the verdict is excessive. The plaintiff Anctil testified that upon receipt of the payment of September 15, 1947, the plaintiffs had been paid "for forty-five months," leaving an unpaid balance consisting of payments for seventy-five months, at $11.50 a month. It is the defendant's position that the verdict based upon these figures is erroneous because payment through September 15, 1947, would be for fifty-six months, leaving a balance of only sixty-four payments for the term.

While the lease provided in its habendum "first payment to be made on the fifteenth day of January, 1943, and payments to be made on the fifteenth of every month thereafter," an earlier provision of the lease relating to use of a deposit made by the lessees stated that the deposit should be applied against rent "beginning January 15, 1944" at the rate of one hundred dollars a month, the lessees paying the balance of the monthly installments. In view of the testimony of the plaintiff Anctil, the Court could find that payment in fact commenced January 15, 1944, so that only forty-five payments had been made as of September 14, 1947. If it was so found however, the balance of the ten year term expiring on January 15, 1953, would call for only sixty-three additional payments, rather than the seventy-five allowed by the verdict.

On the other hand, if payments commenced in January, 1943, and were regularly made, there is merit in the defendant's contention that less than seventy-five installments remained to be met. In that case the payment of September 15, 1947, was the fifty-seventh payment. In either event, the verdict should be reduced by $138.

Since the plaintiff who testified that payments were received "for

forty-five months up to September 15, 1947" also testified that payments were received "according to the terms of the agreement," and the other plaintiff testified that they were regularly received, the plaintiffs are not entitled to recover upon the more favorable theory that the payments commenced in January, 1943, but were not regularly received and hence aggregated only forty-five in number. *Cf. O'Malley* v. *McGillan,* 86 N. H. 186, 188.

*Judgment for the plaintiffs for $724.50.*

All concurred.